IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY MARIE BAKER, | : | CIVIL ACTION |
|     Plaintiff | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
|     Defendant | : | NO. 21-3672 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                          April 15, 2022

      Ashley Marie Baker ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review and the Commissioner has responded to it. For the reasons set forth below, this case is remanded to the Commissioner, pursuant to sentence six of 42 U.S.C. § 405(g).

**I.    PROCEDURAL HISTORY**[1]

      On June 18, 2018, Plaintiff applied for DIB and SSI, alleging disability, because of physical and mental health impairments, that commenced on May 21, 2018. R. 540. The claim was denied, initially; therefore, Plaintiff requested a hearing. *Id.* On January 14, 2020, Plaintiff appeared before Michael J. Kopicki, Administrative Law Judge ("the ALJ"), for a video hearing; Plaintiff was in Reading, Pennsylvania and the ALJ was in Baltimore, Maryland. *Id.* Plaintiff, represented

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Statement of Issues and Brief in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), and the administrative record. ("R.").

by an attorney, and Brian Bierly, a vocational expert, ("the VE") testified at the hearing. *Id.* On February 5, 2020, the ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision. R. 540-51. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on August 30, 2020, making the ALJ's findings the final determination of the Commissioner. R. 5-11. Plaintiff seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

A. <u>Personal History</u>

Plaintiff, born on February 28, 1980, was thirty-eight (38) years old on her alleged onset date. R. 550. She last worked in 2018 and lives with her fiancé and her three children ages 17, 11, and 8 years. R. 561.

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

B. <u>Plaintiff's Testimony</u>

Plaintiff stated that she was diagnosed with Myasthenia Gravis ("MG") when she was a senior in high school. R. 566. The standard treatment for MG is steroids. R. 567. However, as a "last resort," plasmapheresis treatments are used; the last time she had these was in 2002. R. 566-67. Plaintiff related that, without regular consumption of steroids, her MG would eventually cause her to stop breathing. R. 586.

Plaintiff's MG symptoms include extreme limb weakness; her arms and legs give out. She has fallen innumerable times in her life; at present, she estimated falling at least once a month. R. 567. Plaintiff also has poor balance and hand and finger weakness. R. 568. In addition, her MG causes shortness of breath. R. 573. The most Plaintiff can lift is five to seven pounds; if she lifts more, she will be too weak to lift weight again for the remainder of the day. R. 568.

Plaintiff's MG also causes constant fatigue. R. 569. After getting her children off to school in the morning, Plaintiff typically goes back to sleep until 2:00 to 4:00 p.m. R. 569, 581. She estimates that she requires fourteen to eighteen hours of sleep daily, *id.*, otherwise, she unintentionally falls asleep during the day while seated. *Id.*

Plaintiff experiences double vision after viewing television, computer or cellphone screens. R. 570. She experiences migraine headaches for which she is treated with a once-a-month injection. R. 570-71. Although these new treatments have reduced the frequency of Plaintiff's debilitating headaches, she still experiences two migraine headaches each month, during which she needs to spend the entire day in a dark room, unable to do anything. R. 571.

The MG medication Plaintiff takes causes gastrointestinal problems. R. 571. When her MG symptoms flare up, she takes two tablets of the medication; on less severe days, she takes one. R. 571-72. Plaintiff's MG symptoms tend to flare up in the winter. R. 572. During a flare up, her

pain is worse and her fingers cramp and lose feeling; therefore, she has difficulty holding things. R. 572. Even without a flare up, Plaintiff cannot button clothing or twist open jars. R. 575-76.

Plaintiff says she can only sit for "a couple minutes," because of back pain. R. 574. She can stand for three to five minutes, but must lean on something and then rest for ten minutes. R. 575-76. Plaintiff can only walk for one city block before she feels fatigued and her legs become limp. R. 575.

The only cooking Plaintiff does is with a microwave. R. 578. She seldom washes dishes, because she tires from standing. *Id.* Plaintiff does not grocery shop alone, because she is too weak to carry bags. R. 578-79. She only vacuums one room at a time before she becomes fatigued. R. 579. When Plaintiff does laundry, someone must carry the basket for her. *Id.* Plaintiff has difficulty dressing herself; so, most days, she stays in pajamas, since she does not go out. R. 580. She has difficulty climbing into her bathtub to shower; her fiancé assists her. R. 580-81.

C.  Vocational Testimony

The VE characterized Plaintiff's past jobs as follows: housekeeper was light,[3] unskilled[4] work; bank teller was light, skilled[5] work; and care aide was medium,[6] semi-skilled[7] work. R. 588. The ALJ then asked the VE to consider a person of Plaintiff's age, education and work

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).
[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(b).
[5] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. … Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).
[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[7] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.868(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

experience, with the following abilities and limitations: able to do light work; stand or walk, with normal breaks, for six hours in an eight hour day; sit, with normal breaks, for six hours in an eight hour day; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme heat, cold, wetness, and humidity; avoid moderate exposure to hazards such as dangerous machinery and unprotected heights.[8] R. 588-89. The VE responded that the hypothetical individual could perform three, light, unskilled jobs: (1) electrical assembler (57,000 positions in the national economy); (2) parts assembler (56,000 positions in the national economy); and (3) small products assembler (68,000 positions in the national economy). R. 589. Next, the VE verified that all three jobs could be performed, even if the individual could only stand or walk for up to two out of eight hours. R. 589-60.

The ALJ also asked the VE to identify sedentary[9] jobs the hypothetical person could perform. R. 590. The VE offered three, unskilled, sedentary jobs: (1) final assembler (22,000 positions in the national economy); (2) inspector (23,000 positions in the national economy); and (3) table worker (20,000 positions in the national economy). R. 590. The VE further testified that missing two or three work-days per month or being off-task more than 15% of the time would render a person unemployable. R. 590, 593.

### III.   THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2022.

---

[8] Although the VE testified that the person could perform Plaintiff's past housekeeper job, the ALJ decided to eliminate that job as not relevant. R. 589.
[9] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

2. [Plaintiff] has not engaged in substantial gainful activity since May 21, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: myasthenia gravis, headaches, and scoliosis (20 CFR 404.1520(c), 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps, stairs, stoop, crouch, crawl, kneel, balance; she can never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to extreme temperatures, humidity, and wetness, and even moderate exposure to dangerous machinery, or unprotected heights.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Plaintiff] was born on February 28, 1980 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563and 416.963).

8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not she has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff]

    can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, at any time from May 21, 2018 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 542, 544-45, 549-551.

## IV. DISCUSSION

A. <u>Standard of Review</u>

   Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past relevant work, she could perform other light jobs that exist in the national economy and, hence, was not disabled. R. 540-51.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by failing to properly account for the symptoms caused

by her severe headaches and Myasthenia Gravis ("MG") in the residual functional capacity ("RFC") assessment. Pl. Br. at 12-17. She also argues that records she submitted after the ALJ's decision warrant a remand under sentence six of 42 U.S.C. § 405(g). Pl. Br. at 17-21. The Commissioner denies Plaintiff's assertions. Resp. at 4-14. This court finds that the ALJ's decision was not erroneous, however, the new evidence Plaintiff submitted after the ALJ's decision justifies a sentence six remand.

    1. <u>The ALJ Properly Considered Plaintiff's Symptoms when Evaluating her RFC</u>

Plaintiff argues that the ALJ erred reversibly, because he did not indicate what, if any, components of his RFC assessment were intended to accommodate the limitations caused by Plaintiff's migraine headaches and MG. Pl. Br. at 12-17. The Commissioner argues that the ALJ properly evaluated Plaintiff's RFC. Resp. at 4-10. This court finds that the Commissioner committed no error in setting the RFC.

First, as to Plaintiff's migraine headaches, Plaintiff fails to identify any specific limitations other than her alleged need to sit in a dark room for an entire day or more, twice a month. Pl. Br. at 15. It is true that this level of absenteeism would be disabling, per the VE's testimony. R. 590. However, Plaintiff incorrectly assumes that the ALJ was required to credit her testimony in this regard. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (stating that courts generally defer to an ALJ's credibility determination). Plaintiff's attorney asked Plaintiff about her alleged symptoms from migraines, R. 570-71, the ALJ observed her testimony about this condition, *id.*, and he chose not to believe it. This court should defer to that determination. *See Reefer*, 326 F.3d at 380.

Next, Plaintiff emphasizes the chronic fatigue that her MG causes. Pl. Br. at 17. She testified at the hearing that MG-caused fatigue required her to sleep fourteen to eighteen hours

9

daily, including after seeing her children off to school in the morning. R. 567-68. The court recognizes it is improbable that anyone who sleeps so much can work an eight-hour day. However, as with Plaintiff's migraines symptoms, the ALJ heard but discredited Plaintiff's testimony regarding how drastic her MG symptoms were. The court should defer to that determination. *See Reefer*, 326 F.3d at 380.

    2.  <u>This Case Should be Remanded, Pursuant to Sentence Six</u>

Plaintiff argues that records she submitted to the Appeals Council, for the time period from February 17, 2020 to March 31, 2020, justify remanding this case, pursuant to sentence six of 42 U.S.C. § 405(g). Pl. Br. at 17-21. The Commissioner, while admitting that the new records show that Plaintiff's MG condition was worse than it appeared to the ALJ, Resp. at 13, nevertheless, maintains that a sentence six remand is unwarranted, because Plaintiff's worsening condition does not relate to the relevant period. *Id.* at 13-14. This court finds that, because these records are very close in time to the ALJ's February 5, 2020 decision and corroborate Plaintiff's January 14, 2020 testimony about her condition, they do satisfy the requirements for a sentence six remand.

In order to obtain a sentence six remand, the claimant must demonstrate that the evidence not presented to the ALJ is new and material and there is good cause for the failure to have presented the evidence to the ALJ. *Matthews v. Apfel*, 239 F.3d 589, 592-93 (3d Cir. 2001) (citing *Szubak v. Sect'y of HHS*, 745 F.2d 831, 833 (3d Cir. 1984)). Evidence that is compiled after the ALJ's decision is new. *Szubak*, 745 F.2d at 833. Evidence is material, if it creates the reasonable probability of a different outcome; this burden is not great, the new evidence need not meet a preponderance test. *Newhouse v. Heckler*, 753 F.2d 283, 287 (3d Cir. 1985). To be material, the new evidence must relate to the time-period for which benefits were denied; it cannot prove a later-acquired condition, or the deterioration of a prior condition. *Szubak*, 745 F.2d at 833. Finally,

good cause exists when the records reveal that the claimant did not delay providing the "new" evidence to the ALJ sooner. *See Matthews*, 239 F.3d at 595; *Szubak*, 745 F.2d at 834.

In this case, the Commissioner does not contest that the evidence Plaintiff relies upon was new, inasmuch as, none of it existed at the time of the ALJ's decision. Likewise, the Commissioner does not argue a lack of good cause; again, since the evidence was not created until shortly **after** the ALJ's decision, Plaintiff did not intentionally withhold it. The Commissioner does argue that new evidence is not material, because it demonstrates the deterioration of Plaintiff's MG condition, not the state of the condition on February 5, 2020. Resp. at 13-14. This argument might have some sway if the records in question were the result of treatment that occurred months or years after February 5, 2020. However, that is not the case. Instead, all of the records in question date from February 17, 2020 to March 31, 2020, that is **twelve to forty-four** days after the ALJ's decision. In *Newhouse*, the Third Circuit found that new evidence was material despite a longer gap between the ALJ's decision and the existence of new evidence. *See* 753 F.2d at 284 (noting that the ALJ's decision was in January 1983 and the new evidence consisted of records from the claimant's June 1983 hospitalization). In light of *Newhouse*, the Commissioner's position that the records in question do not relate to Plaintiff's MG condition on February 5, 2020 is untenable. Further, as in *Szubak, see* 745 F.2d at 833, the new records corroborate Plaintiff's testimony about her MG symptoms of weakness and difficulty walking.[10] R. 18, 20, 531. Hence, the new records are material. *Szubak*, 745 F.2d at 833. This case is remanded, pursuant to sentence six of 42 U.S.C. § 405(g).

An implementing order follows.

---

[10] The court notes that the March 31, 2022 records are particularly grave in that, despite being hospitalized for five plasma treatments, Plaintiff's lower extremity muscle weakness did not improve. R. 18. Hence, Plaintiff needed a walker to ambulate. *Id.*

11